[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 153 
This appeal brings up for review the conviction of defendant-appellant (hereinafter called Vigorito) under an indictment charging him with receiving stolen property, consisting of 16 rolls of Dobby Luana 100% acetate material, of the value of $676.80, and the property of Grant Dyeing 
Finishing Co., at Paterson, New Jersey, on May 23, 1946, "well knowing the said property, goods and chattels to have been feloniously stolen, * * *"
Appellant has assigned twenty grounds of appeal, which may be conveniently grouped under five headings, requiring consideration and discussion. They are: (1) did the court err in refusing to permit cross-examination of the state's witness, Robert Santillo, as to whether he had been sentenced on a plea of non-vult to an indictment charging him and one Michael *Page 154 
Bonsick with breaking, entering, larceny, and receiving of the alleged stolen goods?; (2) whether the court erred and prejudiced the defendant's case in the comments he made at the time he refused to permit the cross-examination of Santillo as to whether he had been sentenced; (3) whether the court erred in charging the applicable law; (4) whether the court erred in failing to charge the specific statute (R.S. 2:164-1) to the jury; and (5) whether the verdict was against the weight of the evidence.
The facts briefly are these: Michael Bonsick and Robert Santillo were employees of the Grant Dyeing Finishing Company, of Paterson, New Jersey. They conceived and executed a plan of stealing certain dress material, having a value as alleged in the indictment of $676.80, then in the possession of their employer as a bailee. An investigation of the crime led to the arrest and indictment of both Bonsick and Santillo, who pleaded non-vult to the charges. Bonsick was sentenced to a term in the State Prison, while Santillo was still awaiting sentence at the time of the trial of the defendant. Prior to the theft, Santillo arranged with one Michael Casale, his landlord, who was engaged in the milk delivery business and whom he had known for several years, to store the material in his milk shed, located on the rear of his mother's property, about six houses away from Casale's home. Casale agreed to get a purchaser for the goods and produced Vigorito as such buyer. Vigorito was a junk dealer and bought remnants.
On the day of the theft Santillo met Casale and told him that he "would have the stuff" the next morning and that it would be put in the shed. On the day of the theft Casale informed Vigorito that Santillo expected to obtain the material that night, and told Vigorito to come around to the milk shed the following morning. At the appointed time and place, Vigorito met Casale and Santillo and, after some dickering, Vigorito paid Santillo a sum in cash testified to have been somewhere between $550 and $575. Later on in the day the defendant came to the milk shed and removed the rolls which he thereafter disposed of to an undisclosed purchaser. Parenthetically, it may be observed that Michael Casale did not receive any money out *Page 155 
of the transaction. He likewise has pleaded non-vult to the crime, and was awaiting sentence at the time of trial.
It is said under (1) above that the trial court erred in refusing to permit defendant to cross-examine the witness Santillo as to whether he had been sentenced on his plea of non-vult to the indictment. During Santillo's cross-examination the following exchange occurred:
"Q. Now, Mr. Santillo, you have not been sentenced in that case yet, have you?
"Mr. Collester: Objected to as improper.
"The Court: Yes, that is up to this Court. The Court has ninety days within which to sentence."
The purpose of the question was obviously to attack the credibility of the witness, Santillo. From the record it appears that prior to propounding the question, defense counsel had examined Santillo at length concerning his arrest; whether or not he had given a statement to the police; the number of times he had been in the prosecutor's office prior to trial; the fact that he had spoken to representatives of the prosecutor pertaining to this case and other pertinent matters. This examination was permitted by the trial court and no objection was made thereto by the state. Also, the record reveals that the court, in the ensuing colloquy with counsel, stated that the defendant had not yet been sentenced and that the court would impose sentence on the first Friday following the completion of this trial. We are unable to perceive, under these circumstances, how the defendant Vigorito suffered any manifest wrong or injury or was in any way prejudiced by the ruling of the trial court.
It is next said (2) that the trial court erred and prejudiced the defendant's case in certain comments he made at the time of his refusal to permit cross-examination of Santillo on the question of his sentence. The alleged error appears in the following colloquy between the court and defense counsel:
"Mr. Saltzman: I think the question is a proper one, your Honor. It goes to the question of credibility.
"The Court: Oh, no, I don't think so. This is all one transaction involving the stealing of goods, not by him (Santillo) alone, but by another man (Michael Bonsick) who is already in State Prison. He *Page 156 
was on parole and violated his parole. I sentenced him immediately, but as to these other cases, I decided to withhold sentence until all the cases have been completed, because I was informed by the Prosecutor that these other defendants were to be here as witnesses, and he didn't want to bring them up here from State Prison. However, they will be sentenced in due time, according to law." (Parentheses ours)
The indictments concerning Santillo and Bonsick were offered in evidence by defense counsel, and, as a matter of fact, the comment of the court was the result of defense counsel's prior reference to the indictments during the course of the trial. Likewise, it was testified by Santillo that he and Michael Bonsick had committed the theft. Although the trial court may have been over-zealous in his comment on the question of sentence, it nevertheless follows that the defendant suffered no manifest wrong or injury thereby. If anything, the comments served merely to emphasize the criminal status of the witness, Santillo, which certainly was not a factor of which the defendant ought now to complain.
Defendant complained further that (3) the court erroneously charged the applicable law with reference to the crime alleged in the indictment. A consideration of the court's charge in its entirety satisfies us that no error appears therein. Our reading of the charge convinces us that the trial court, if anything, was careful and assiduous in defining the elements of the crime charged, the questions of the burden of proof, reasonable doubt, and the effect that the jury, acting in its province as the finder of the facts, might give to the testimony of the witnesses. In our opinion, the jury was given a full and understandable exposition of the questions of law involved, and as to how the same were to be applied to the facts as the jury might find them to be. State v. Werner, 1 N.J. Misc. R. 180(Sup.Ct. 1923). Cf. State v. Lisena, 129 N.J. Law 569(Sup.Ct. 1943), 30 Atl. (2d) 593, affirmed 131 N.J. Law 39(E. A. 1943), 34 Atl. (2d) 407.
We are asked to set aside defendant's conviction on the grounds that (4) the trial court erred in failing to charge the specific words of the statute (R.S. 2:164-1) to the jury. No request so to charge was made by the defendant, nor was there *Page 157 
any complaint made by counsel when the charge was concluded as to the court's failure to charge the applicable provisions of the statute. In the absence of such request or complaint the defendant is barred from raising the question on appeal. Statev. Capawanna, 118 N.J. Law 429 (Sup.Ct. 1937),193 Atl. 902, affirmed 119 N.J. Law 337 (E. A. 1937),196 Atl. 679. As stated, the trial court satisfactorily and properly charged the law applicable to the crime in question. No manifest wrong or injury was suffered by the defendant thereby.
Finally, we are importuned to set aside the conviction on the grounds that (5) the verdict was against the weight of the evidence. We are entirely satisfied that it was not. There was sufficient evidence, if the jury believed it, and apparently it did, to warrant the verdict against the defendant. Likewise, the court did not err in refusing to acquit the defendant. The factual testimony was highly contradictory and presented a jury question which was beyond the power of the court to determine.State v. Krupin, 100 N.J. Law 7 (Sup.Ct. 1924),125 Atl. 97, affirmed 101 N.J. Law 228 (E. A. 1924),127 Atl. 270. Cf. State v. Brown, 72 N.J. Law 354 (Sup.Ct.
1905), 60 Atl. 1117.
We have considered all of the other arguments advanced by the defendant in support of his contentions and find them to be without merit
The judgment of conviction is affirmed. *Page 158